## WESTCOTT v. BONNER.

1. SCHOOLS AND SCHOOL DISTRICTS — VALIDITY OF PURCHASE OF LAND—INTEREST OF MEMBER OF SCHOOL BOARD.

   The purchase of land by a school district for school purposes and the bonds issued in payment thereof were not void under 3 Comp. Laws 1915, § 15102, by reason of the fact that for convenience the property had been deeded to the secretary of the school board, who, with his wife, quitclaimed to the board, where he paid nothing for the property and got nothing for it.[1]

2. SAME—ELECTION—BALLOT—DOUBLE QUESTION.

   The objection that the question voted upon by the school electors was a double one, is without merit.[2]

3. SAME—FRAUD—EVIDENCE—SUFFICIENCY.

   In a suit by taxpayers to set aside the proceedings for the purchase of certain property for school purposes and to restrain the issuance of bonds voted to provide funds to pay therefor, evidence *held*, insufficient to show any fraud.[3]

4. SAME — IMPROPER USE OF SCHOOL BUILDING — INJUNCTION — REMEDY.

   The purchase of the property will not be declared void by reason of the fact that it is also' used for other than school purposes, where the bill does not seek to restrain improper use of the building.[4]

Appeal from Muskegon; Vanderwerp (John), J. Submitted January 13, 1925. (Docket No. 85.) Decided April 3, 1925.

Bill by Morris Westcott and others against S. M. Bonner and others to set aside proceedings to acquire certain property for school purposes. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

[1]Schools and School Districts, 35 Cyc. p. 954; [2]Id., 35 Cyc. p. 932; [3]Id., 35 Cyc. p. 935 (1926 Anno); [4]Id., 35 Cyc. p. 935 (1926 Anno).

*Dunham, Cholette & Quail* (*John M. Dunham* and *Joseph T. Riley,* of counsel), for plaintiffs.

*Cross, Foote & Sessions,* for defendants.

MOORE, J.   The bill of complaint in this case was filed November 20, 1923, by several taxpayers and residents of school district No. 8, fractional, Casnovia township, Muskegon county, to restrain the purchase of certain property, to restrain the issuing and delivering of certain bonds claimed to have been illegally voted at a school meeting, and praying that the entire bond matter and attempted purchase be set aside as irregular, fraudulent and void.   The defendants answered fully and denied any fraud.   The case was heard before Judge Vanderwerp who entered a decree dismissing the bill of complaint, and the cause is brought to this court by plaintiffs for review.

We quote from the brief of appellants:

"The questions involved in this case may be stated as follows:
"(1) Proceedings and sale void under the statute because of interest of Secretary Davis.
"(2) Question voted upon a double question.
"(3) Fraud in proceedings.
"(4) Building acquired for illegal purpose."

Before entering upon the discussion thus presented, it may be well to quote some of the opinion of the trial judge, as follows:

"(c) The purchase was for school purposes, even though the words 'public purposes' were also used. The authorities cited by counsel for plaintiffs, largely from courts of other States, hold that public buildings owned by school districts cannot be used for private purposes, either gratuitously or for compensation. That rule may be true, but it is sufficient to say that this bill is not filed to restrain the school board from allowing the use of the property for private purposes, and at least until objection is made, courts will not

issue restraining orders against the use of buildings for other purposes.    The board should be allowed to determine what it should be used for, having in mind the principal object for which the property was purchased, and the requirement of the statute covering such purchase.    I am satisfied it was the fair intention of the board to have the use of the building for school purposes, and matters incidental thereto, although it does appear some rentals were received for the building and used for private purposes.    It was not a scheme, as claimed by plaintiffs, to purchase the property mainly for a community building for the village of Casnovia.

"(*d*) There was no fraud on the plaintiffs.    Notice of the election was given in a public manner.    Some of the plaintiffs actually participated in the election. There were 22 'nay' votes against 50 cast in the affirmative.    The fact that some of the plaintiffs and some of the other taxpayers in the district lived outside of the village of Casnovia, did not prevent their voting on the proposition, had they seen fit to do so, provided they were qualified electors in the district.    All electors qualified to vote had an opportunity to do so, and some availed themselves of it.    If others did not, it is their own fault.    It is clear that the matter had been under discussion at and since the regular school meeting held on the second Monday in July, the special election not being held until August 6th.

"The school district is now the owner of the property.    It was bought after the district had voted to buy it, for a lawful purpose.    The transaction had been completed, the bonds issued, sold and delivered before the filing of the bill in this case.    In my opinion the transaction and all of the proceedings leading up to it should be upheld."

1. The most important question in the case is whether the transaction is void because Mr. Davis, a member of the school board, had a deed of the property, and to remove all clouds upon the title it was necessary for him and his wife to give a quitclaim deed to the school district, which was done.    Counsel insist that the interest of Mr. Davis in the property

voided the transaction, citing section 15102, 3 Comp. Laws 1915; *Consolidated Coal Co.* v. *Board of Trustees,* 164 Mich. 235; *Ferle* v. *City of Lansing,* 189 Mich. 501 (L. R. A. 1917C, 1096), and other authorities. The record shows the building which was bought was built by a man by the name of Abele, using $4,500 which was raised by public subscription, the purpose being to have a public theatre or a community hall. Mr. Abele also borrowed $3,000 for which he gave a mortgage on the property to Mr. and Mrs. Allen. Mr. Abele did not make a success of the enterprise and December 23, 1922, he and his wife made a deed of the property to Mr. Davis. This deed included a piano said to have cost $650, and 200 chairs at $1.25 each. The testimony is that Mr. Davis paid nothing for this deed and did not put it upon record for a time. Many of the people in the school district thought it would be well to acquire the property for a gymnasium and other school purposes, and a special school meeting was called, proper notices of which were given, and an unusual number of the electors were present.

The official ballot read:

"At a regular meeting of the school board of Casnovia School District No. 8, Fr., held August 6, 1923, it was voted to call a special election of the voters of said district for the purpose of bonding said school district for the sum of $4,500 for the purpose of purchasing the hall known as the Bijou-Dream for public and school purposes. Said bonds to run for a period of five years and paid as follows: $500 and entire interest, first year," etc.

"For the issuing of school bonds for said purposes. Yes.

"At a regular meeting of the school board of Casnovia School District No. 8, Fr., held August 6, 192..., it was voted to call a special election of the voters of said district for the purpose of bonding said school district for the sum of $4,500 for the purpose of purchasing the hall known as the Bijou-Dream for

public and school purposes.    Said bonds to run for a period of five years and paid as follows:    $500 and entire interest first year," etc.

"For the issuing of school bonds for said purpose. No."

Fifty of the voters voted yes, and 22 voted no.    The school officers then issued the bonds and Mrs. Allen, who was then the owner of the mortgage, accepted $3,000 of them as payment of her mortgage on September 28, 1923, and on that day assigned her mortgage to the school district.    On October 11th, Mr. Davis and his wife made a quitclaim deed of the property to the school district.    Mr. Davis paid nothing for the property and got nothing for it.    Before Mr. Abele put up the building the trustees of the village of Casnovia had given him a deed which contained the following:

"The lot and property to be used for public hall purposes unless it becomes necessary for the interests of all parties interested in the public hall property of the village of Casnovia to convert the property into some other public enterprise.    Then, and not until then, can this property be sold for any other purpose than a public hall.    To convert said property into some other public enterprise, the owners of said property shall pay back to the village the cost of said lot or a price less than the cost of said lot, as shall be agreed with the village council."

On the 11th of October the village trustees gave to the school district a quitclaim deed.    Brott Brothers, lumber dealers, had a lien on the property which resulted in a decree in their favor on October 12, 1923, and the school district paid $690.07 to satisfy this decree.    The record shows that for $4,500 the school district got a property including the piano and chairs that cost twice that amount and which the school district needed, and which the witnesses say was well worth $9,000.

230—Mich.—21.

2. An examination of the ballot will show there is nothing in the contention under this head. See *Muskegon Public Schools* v. *Vander Laan*, 211 Mich. 85.

3. We think there is an entire failure to show any fraud in the proceedings.

4. It is urged under this head that the building is used for other than gymnasium and school purposes. The bill does not seek to enjoin defendants from an improper use of the building. See *Kelsey* v. *Township of Burns*, 223 Mich. 173; *Dyer* v. *Township of Burns*, 228 Mich. 513. The special meeting was held August 20, 1923, and some of the plaintiffs were present and participated therein, and we think all of them knew about it. They did not file this bill of complaint until three months later. In the meantime the bonds had been issued and sold and such conveyances had been made as to give the title in fee to the school district. We do not think appellants' claim has any merit.

The decree is affirmed, with costs to the appellees.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.